IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| James David White, ) | |
| ) | Civil Action No. 6:05-1737-GRA-WMC |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Dr. Karen Stacher, MD; ) | |
| Dr. Evan Vogel, MD; ) | |
| Nela Laughridge; ) | |
| Ivan James Toney, Esq.; ) | |
| James W. Segura, Esq. ) | |
| Kim R. Varner, Esq.; ) | |
| Mike Sanders; ) | |
| Ruth Ann Earl; ) | |
| Jim Aiken; ) | |
| J. F. Hamlett; ) | |
| T. T. Thompson; ) | |
| and M. S. Huntington, ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on the motions to dismiss filed by defendants Toney, Laughridge, Varner, Segura, Aiken, Hamlett, Thompson, and Huntington pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and the motion for summary judgment filed by defendants Stacher, Vogel, Sanders, and Earl pursuant to Rule 56. The plaintiff, who is proceeding *pro se*, brought this action alleging violation of his civil rights and various state law claims.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate Judge for consideration.

**BACKGROUND**

On May 23, 2005, the plaintiff went to defendant Ivan James Toney's law office in Greenville, South Carolina, for the purpose of picketing him.[1] The plaintiff apparently claims that he became homeless due to Toney's "reckless and willful disregard of his client, Patricia L. Greenway" (am. comp. ¶ 3). Toney shares office space with defendant attorneys Kim Varner and James Segura. The plaintiff claims that Toney contacted Greenville Mental Health ("GMH") and, shortly thereafter, a caseworker from GMH arrived at the office building. The caseworker, defendant Mike Sanders, went inside Toney's office and then spoke with the plaintiff. Sanders then left the premises.

On May 24, 2005, the plaintiff claims he attempted to file a report with the Greenville City Police claiming conspiracy by defendants Dr. Karen Stacher, the plaintiff's doctor and an employee of GMH; Ruth Ann Earl, an employee of GMH; Sanders; Toney; Varner; and Segura. He claims he was refused the right to file such a report.

The plaintiff went back to Toney's office on May 24, 2005, to resume picketing. Sanders returned and tried to convince the plaintiff to leave the premises in his custody. The plaintiff then called the Greenville Police Department, and two officers responded to the call. The officers made a case report of the incident. The plaintiff claims that defendant officers T. T. Thompson and M. S. Huntington "commit[ted] perjury" on the police report (am. comp. ¶ 11). Later that day, defendant officers J. M. Aiken and J. F. Hamlett returned to the scene and took the plaintiff into custody pursuant to an executed Application for Involuntary Emergency Hospitalization for Mental Illness,[2] which was signed by defendant Nela Laughridge (defendant Toney's paralegal), and an Order of Detention signed by a probate judge. The plaintiff was taken to GMH, where he was evaluated by defendant Dr. Evan

---

[1] A related case, *Greenway v. Toney*, 6:05-cv-01737-GRA-WMC, was filed by Patricia Lee Greenway, who was picketing the law firm along with the plaintiff.

[2] The application states that the plaintiff had made threats to physically harm other persons (11/10/05 pl. obj. to def. m. to dismiss, ex. 11 at 3).

2

Vogel.[3] The plaintiff was later transported to Patrick B. Harris hospital, and he was released on May 31, 2005.

The plaintiff filed this action on June 17, 2005, alleging claims of violation of his civil rights and various causes of action under state law, including false swearing or perjury, subornation of perjury, false imprisonment, false arrest, stalking, kidnaping, malicious prosecution, and civil conspiracy. On August 18, 2005, the plaintiff moved to amend his complaint, and on September 20, 2005, that motion was denied.

On October 6, 2005, defendants Toney and Laughridge filed a motion to dismiss. By order filed October 7, 2005, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On October 14, 2005, defendants Segura and Varner filed a motion to dismiss. By order filed October 17, 2005, pursuant to *Roseboro*, the plaintiff again was advised of the dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed a response to these motions on November 13, 2005.

The plaintiff filed another motion to amend his complaint on October 14, 2005, and that motion was granted on November 3, 2005. The amended complaint was filed on November 14, 2005.[4]

On November 15, 2005, defendants Aiken, Hamlett, Thompson, and Huntington filed a motion to dismiss. By order filed on October 17, 2005, pursuant to *Roseboro*, the

---

[3] Dr. Evan Vogel evaluated the plaintiff upon his arrival at GMH and recommended involuntary emergency hospitalization. In the Certificate of Licensed Physician Examination for Emergency Admission form, he stated that he felt the plaintiff needed closer observation in order to "assess [his] dangerousness" (11/10/05 pl. obj. to def. m. to dismiss, ex. 11 at 5).

[4] Defendants Toney, Laughridge, Segura, and Varner also filed motions to dismiss the amended complaint based upon the supporting memorandums previously filed with their original motions to dismiss. These defendants noted that no new issues of fact had been alleged to differentiate the amended complaint from the original complaint. This court agrees and will consider all of the dispositive motions at issue in this Report to apply to the amended complaint.

3

plaintiff again was advised of the dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed a response to the motion on December 19, 2005. On February 14, 2006, defendants Sanders, Earl, Stacher, and Vogel filed a motion for summary judgment. By order filed on February 16, 2006, pursuant to *Roseboro*, the plaintiff again was advised of the dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed a response to the motion on March 22, 2006.

## **APPLICABLE LAW**

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief. In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)(citations omitted). If on a motion pursuant to Rule 12(b)(6), matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment.

This court is required to construe *pro se* complaints and petitions liberally. Such *pro se* complaints and petitions are held to a less stringent standard than those drafted by attorneys, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied*, *Leeke v. Gordon*, 439 U.S. 970 (1978), and a federal district court is charged with liberally construing a complaint or petition filed by a *pro se* litigant to allow the development of a potentially meritorious case. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). When a federal court is evaluating a *pro se* complaint, the plaintiff's allegations are assumed to be true. *Fine v. City of New York*, 529 F.2d 70, 74 (2nd Cir. 1975). Even under this less stringent standard, the complaint is subject to summary dismissal. The requirement of liberal construction does not

4

mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990).

Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude

the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

## ANALYSIS

### *Section 1983*

To state a claim under §1983,[5] a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981) (*overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327, 330-331 (1986)). "The under-color-of-state-law element of §1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" *American Mfrs.*

---

[5] 42 U.S.C. §1983, provides in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress."

6

*Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quoting *Blum v. Yaretsky*, 457 U.S. 991 (1982)).

Here, the plaintiff alleges that his constitutional rights[6] were violated. He does not allege, however, that defendants Toney, Laughridge, Varner or Segura were employed by the State or otherwise acting on behalf of the State. *See Nunez v. Horn*, 72 F.Supp.2d 24, 26-27 (N.D.N.Y. 1999). It appears that the plaintiff is claiming that one or more of these defendants gave information to the police and/or GMH regarding his presence at the incident site. In *Chiles v. Crooks*, 708 F.Supp. 127 (D.S.C. 1989), the defendant was a security guard who had notified the police of what he believed to be criminal behavior on the part of the plaintiffs. The plaintiffs were subsequently arrested and later brought suit against the defendant security guard for causing the police department to arrest them illegally in violation of their Constitutional rights. The court dismissed the cause of action under Section 1983 stating, "It is well-settled that 'police reliance in making an arrest on the information given by the private party does not make the private party a state actor.'" *Id.* at 130-31 (quoting *Daniel v. Ferguson*, 839 F.2d 1124, 1130 (5th Cir.1988)). The plaintiff has neither alleged nor shown that these defendants acted under the color of state law in this case. Accordingly, the plaintiff fails to state a Section 1983 claim against defendants Toney, Laughridge, Varner, and Segura.

The plaintiff does not allege that defendants Earl or Dr. Stacher had any involvement whatsoever in his involuntary hospitalization. Further, it appears that the remaining defendants acted pursuant to South Carolina Code Annotated §44-17-410, *et seq.*, in taking the plaintiff into emergency custody and evaluating him at GMH. Section 44-17–410 provides for the emergency commitment of a person believed to be mentally ill upon written affidavit of a person who states that the person is mentally ill and because of this condition

---

[6]The plaintiff specifically identifies the First, Sixth, Eighth and Fourteenth Amendments (am. comp. ¶¶ 9, 16).

7

will likely cause serious harm to himself or others if not immediately hospitalized. That section further requires that a physician examine the person and certify whether he or she is of the opinion that the person is mentally ill and because of this condition is likely to cause harm to himself through neglect, inability to care for himself, or personal injury, or otherwise, or to others if not immediately hospitalized. Dr. Evan Vogel evaluated the plaintiff upon his arrival at GMH and recommended involuntary emergency hospitalization. Section 44-17-440 provides for the transportation of the patient for treatment, requiring local law enforcement officers to transport those committed to the appropriate mental health center. That section further states that "[a]n officer acting in accordance with this article is immune from civil liability." The plaintiff has failed to show that these defendants acted in violation of his civil rights and, accordingly, the plaintiff's Section 1983 claims should be dismissed.

### *False Swearing/Perjury, Subornation of Perjury, Stalking, Kidnaping*

As argued by the defendants, there are no civil actions for perjury, subornation of perjury, stalking, and kidnaping. All of these are crimes under the South Carolina Code. *See* S.C. Code Ann. §§16-9-10 (perjury and subornation of perjury), 16-3-1700(B) (stalking), 16-3-910 (kidnaping). Based upon the foregoing, these claims should be dismissed as to all defendants.

### *False Imprisonment and False Arrest*

In order to establish a cause of action for false imprisonment, the plaintiff must allege "(1) that the defendant restrained the plaintiff; (2) that the restraint was intentional; and (3) that the restraint was unlawful." *Andrews v. Piedmont Air Lines*, 377 S.E.2d 127, 130 (S.C. Ct. App. 1989). As to a claim of false arrest, no cause of action for false arrest exists against the party who caused the arrest if the arrest was made by an officer with lawful authority. *See Watkins v. Mobil Oil Corp.*, 313 S.E.2d 641, 642 (S.C. Ct. App. 1984). The

plaintiff does not allege that his restraint was unlawful and in fact admits that the officers and mental health officials possessed legal documents authorizing his involuntary emergency hospitalization, a lawful procedure under South Carolina law. Based upon the foregoing, these claims fail.

### *Malicious Prosecution*

The plaintiff also appears to allege a claim for malicious prosecution (am. comp. ¶ 13). To establish a claim for malicious prosecution under South Carolina law, a plaintiff must allege:

> (1) institution or continuation of original judicial proceedings, either civil or criminal;
> (2) by, or at the instance of, the defendants;
> (3) termination of such proceedings in plaintiff's favor;
> (4) malice in instituting the proceedings;
> (5) lack of probable cause; and
> (6) resulting injury or damage.

*Jordan v. Deese*, 452 S.E.2d 838, 839 (S.C. 1995). The plaintiff has failed to allege or show malice and lack of probable cause on the part of the defendants in instituting the proceedings for involuntary emergency hospitalization of the plaintiff. Accordingly, the claim should be dismissed.

### *Civil Conspiracy*

The plaintiff further alleges that the defendants "conspir[ed] with public officials" to violate his constitutional rights (am. comp. ¶¶ 1, 15). Accordingly, the plaintiff appears to allege violation of 42 U.S.C. §1985(3), which provides in pertinent part:

> If two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property,

9

> or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. §1985(3).

> In order to state a claim under §1985(3), the plaintiff
>
>> must allege and prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*United Bhd. of Carpenters & Joiners of Am. v. Scott*, 463 U.S. 825, 828-29 (1983). Here, even construing his complaint liberally as the court is required to do, the plaintiff fails to allege a meeting of the minds among the defendants to deprive him of a constitutionally protected right or any act in furtherance of such a conspiracy. *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 275-76 (1993). Indeed, "a private person does not conspire with a state official merely by invoking an exercise of the state's official authority." *Tarkowski v. Robert Bartlett Realty Co.*, 644 F.2d 1204, 1208 (7th Cir. 1980). Accordingly, the plaintiff fails to state a claim of civil conspiracy under Section 1985(3) against any defendant.

## CONCLUSION AND RECOMMENDATION

Based upon the foregoing, it is recommended that the dispositive motions filed by the defendants be granted.

WILLIAM M. CATOE
UNITED STATES MAGISTRATE JUDGE

April 3, 2006

Greenville, South Carolina